DEANNE B. LOONIN (SBN 156733)
dloonin@law.harvard.edu
EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiff
SARAH DIEFFENBACHER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| SARAH DIEFFENBACHER,<br><br>*Plaintiff,*<br><br>v.<br><br>BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>*Defendant.* | Case No.: 5:17-cv-342<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
|---|---|

## INTRODUCTION

1. Plaintiff Sarah Dieffenbacher borrowed federal student loans to attend Everest College, a school operated by Corinthian Colleges, Inc.

2. On four separate occasions, she has asserted to the Department of Education that she has a defense to the repayment of these loans under the loan terms and federal law, based on Everest's commission of multiple violations of California law.

3.      In particular, Plaintiff asserted a borrower defense claim in objection to a proposed administrative wage garnishment in service of her federal student loans.

4.      The Department denied her objection, and authorized administrative wage garnishment, without providing her the hearing that she requested, or addressing the evidence that she presented in support of her objection that the loan is not legally enforceable because Everest's misconduct gives rise to a borrower defense to the repayment of her loans.

5.      Plaintiff brings this lawsuit to set aside the Department's decision as in violation of the Administrative Procedure Act.

## JURISDICTION AND VENUE

6.      This court has jurisdiction pursuant to this claim under the Administrative Procedure Act, 5 U.S.C. § 702, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2201.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred, and Plaintiff resides, in this district.

## PARTIES

8.      Plaintiff Sarah Dieffenbacher resides in Wildomar, County of Riverside, California.  She works at Independent Phlebotomy Provider Group, LLC ("IPPG") in Rancho Cucamonga, County of San Bernardino, California.

9.      Defendant Betsy DeVos is the Secretary of the United States Department of Education ("Department").  In her official capacity, the Secretary of Education oversees all operations of the Department of Education and the administration of the federal student loan programs.  This oversight extends to the administration of the Federal Family Education Loan Program and involuntary collection through administrative wage garnishment thereunder.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# BACKGROUND

### *Secretary's Authority over FFEL Loan Program*

10. Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §S 1070-1099, provides the statutory authorization for federal student loans, including the Federal Family Education Loan ("FFEL") program, *id.* § 1071 *et seq.*

11. The Secretary of Education oversees and is responsible for federal student loan programs. 20 U.S.C. § 1070.

12. Under the Direct Loan program, the federal government directly issues student loans. 20 U.S.C. § 1087a.

13. Under the FFEL program, private lenders issued subsidized student loans, which were then insured by guaranty agencies and in turn insured by the Department. *Id.* § 1078(b)-(c).[1]

14. A guaranty agency is "[a] state or private nonprofit organization that has an agreement with the Secretary under which it will administer a loan guarantee program under the Act." 34 C.F.R. § 682.200.

15. The Secretary has promulgated regulations that dictate certain procedures that guaranty agencies must follow in administering FFEL loans. 34 C.F.R .Part 682, Subpart D.

### *Administrative Wage Garnishment*

16. Administrative wage garnishment is a means of involuntary collection of a past-due debt owed to an agency of the federal government. The Secretary is authorized to collect federal student loans by means of administrative wage garnishment, 20 U.S.C. § 1095a; 31 U.S.C. §, 3720D(a), but only if following procedures prescribed by Congress, *see* 20 U.S.C.§ 1095a(a); 31 U.S.C. § 3720D(b).

---

[1] No new loans can be made under the FFEL program, effective July 1, 2010. *See* Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-151, § 2201 *et seq.*, 124 Stat. 1074 *et seq.* (2010).

17. The HEA requires that a borrower be afforded "a hearing…on the determination of the Secretary or the guaranty agency, as appropriate, concerning the existence or the amount of the debt," 20 U.S.C. §§ 1095a(a)(5), (b).

18. Among other duties, "[a] guaranty agency must initiate administrative wage garnishment proceedings against all eligible borrowers" with defaulted FFEL loans, subject to limited exceptions not at issue here. 34 C.F.R. § 682.410(b)(6)(vi).

19. The Department has promulgated regulations that govern administrative wage garnishment. *See* 34 C.F.R. Part 34, 34 C.F.R. § 682.410.

20. In addition to prescribing procedures by regulation, the Secretary has provided guidance to guaranty agencies in the form of "Dear Colleague" letters and manuals on administrative wage garnishment.

21. Prior to any administrative wage garnishment, a guaranty agency must provide a borrower in writing with at least 30 days notice of the intent to garnish, and explanation of the borrower's rights, and applicable deadlines. 34 C.F.R. § 682.410(b)(9)(i)(A), (B).

22. The form of notice is approved by the Secretary.

23. The guaranty agency must "offer the borrower an opportunity to inspect and copy agency records related to the debt." 34 C.F.R. § 682.410(b)(9)(i)(C).

24. The guaranty agency must offer an opportunity for a hearing on any "any objection regarding the existence, amount, or enforceability of the debt," 34 C.F.R. § 682.410(b)(9)(i)(E)(1).

25. A borrower who requests a hearing in writing is entitled to a hearing and to elect between an oral and written hearing. 34 C.F.R. § 682.410(b)(9)(i)(E)(2).

26. If a borrower submits a written request for a hearing within 30 days of receiving notice, "the guaranty agency may not issue a withholding order until the

borrower has been provided the requested hearing and a decision has been rendered." 34 C.F.R. § 682.410(b)(9)(i)(G).

27. According to the Secretary's manual on administrative wage garnishment, a decision on a borrower's objection to garnishment must be based on evidence presented and applicable laws and regulations. The hearing official must make an independent, de novo determination on questions of law and fact raised by borrower objections to the existence, amount, and enforceability of the debt.

28. "[U]nder no circumstances" may a hearing be conducted by someone under the supervision or control of the guaranty agency. 34 C.F.R. § 682.410(b)(9)(i)(I).

29. Once issued, a garnishment order remains in effect until the guaranty agency rescinds the order or the debt is fully paid. 34 C.F.R. § 682.410(b)(9)(i)(O).

30. A decision on a borrower's objection to administrative wage garnishment is subject to judicial review based on the administrative record. *See, e.g.*, 78 Fed. Reg. 45618, 45645 (July 29, 2013) (explaining requirements of 34 C.F.R. § 682.410(b)(9)(i)(J)).

### *Challenge to Legal Enforceability of Debt Based on School Misconduct*

31. By regulation, a holder of a FFEL loan is "subject to all claims and defenses that the borrower could assert against the school with respect to that loan" if a sufficiently close relationship existed between the school and the lender. 34 C.F.R. § 682.209(g).

32. Since approximately 1994, every FFEL loan has been governed by a Master Promissory Note ("MPN") that contains similar language, providing that the borrower is entitled to assert, as a defense to repayment of the loan, "all claims and defenses that the borrower could assert against the school" with respect to the loans.

33. Direct Loans and FFEL loans have the same terms, conditions, and benefits. HEA § 455(a), 20 U.S.C. § 1087e(a)(1).

34. The Department has stated that borrower rights to assert defenses to loan repayment based on school misconduct are coextensive between the FFEL and Direct Loan program. *See, e.g.,* 60 Fed. Reg. 37768-69 (Jul. 21, 1995).

35. A Direct Loan regulation provides that "in any proceeding to collect" a loan, "the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1). The regulation specifically identifies wage garnishment proceedings. *Id.* § 685.206(c)(1)(ii).

## FACTUAL ALLEGATIONS

36. Plaintiff borrowed FFEL loans to pay for her attendance at Everest College-Ontario Metro, in Ontario, California ("Everest").

37. Plaintiff received the loans from College Loan Corporation, a lender under the FFEL program.

38. Plaintiff's FFEL loans are held by Educational Credit Management Corporation ("ECMC"), a guaranty agency.

39. In March 2015, Plaintiff submitted an application to the Department for loan cancellation based on the misconduct of Everest, under "borrower defense" or "defense to repayment" provisions of Department regulations and the terms of her MPN.

40. Plaintiff has not received an acknowledgment of this application from the Department.

41. Plaintiff defaulted on her FFEL loans in approximately August 2015.

42. Plaintiff received from ECMC a notice, dated August 15, 2016, alerting her that ECMC intended to offset her federal income tax refund in service of her defaulted FFEL loans, under the Treasury Offset Program ("TOP").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

43. On October 11, 2016, through counsel, Plaintiff sent a written request for records to ECMC, including a complete copy of the promissory note(s) establishing the loans, and other information.

44. On October 18, 2016, through counsel, Plaintiff submitted a timely objection to the proposed TOP offset and a request for a hearing to ECMC.

45. Plaintiff objected to TOP on the grounds that her loans are not legally enforceable because of misconduct committed by Everest in violation of California law.

46. On October 19, 2016, ECMC sent Plaintiff a notice of intent to garnish her wages in service of her defaulted FFEL loans.

47. On November 2, 2016, through counsel, Plaintiff submitted a timely objection to the proposed wage garnishment to ECMC and requested an in-person hearing to present her evidence.

48. Plaintiff objected to wage garnishment on the grounds that her loans are not legally enforceable because of misconduct committed by Everest in violation of California law.

49. The objection and request for hearing included a 29-page letter explaining why Plaintiff's loans are not legally enforceable and 254 pages of exhibits, including a sworn statement from Plaintiff, records, and evidence from the Attorney General of California regarding documented misconduct on the part of Everest and its parent company, Corinthian Colleges, Inc., in violation of California state law.

50. As detailed in the submission, Plaintiff asserts that Everest induced her to enroll in a paralegal program on the basis of misrepresentations and deceptions, including

   a. That program graduates are in demand for paralegal jobs at "big law firms," 90% of graduates of the program obtain jobs in the field of study and earn at least $55,000;

    b. Concerning the nature of career placement assistance Everest would provide, including that it would place her in an internship at a courthouse, and had connections with many area employers;

    c. About the content and quality of the program, including that it was "ABA accredited," and offered "hands-on" learning;

    d. That credits earned in the program were transferable, and specifically that Plaintiff could transfer her credits from Everest towards a law degree at La Verne College of Law and other schools;

    e. Concerning program cost, specifically that it would cost "about $5000 dollars."

51. Additionally, Plaintiff asserted that Everest targeted her for recruitment because of her status as a single mother; and engaged in deceptive financial aid practices.

52. As set forth in her submission, these practices violated provisions of California's Consumer Legal Remedies Act, Unfair Competition Law, and other provisions of California law.

53. These violations injured Plaintiff. Despite her best attempts, Plaintiff has never worked as a paralegal. Her credential was meaningless to employers. The ABA does not accredit paralegal programs, and she could not transfer the credits she earned at Everest. The program cost her over $22,000.

54. Also detailed in her submission, Plaintiff is entitled to raise these illegal acts as a defense to repayment of her loan under the plain terms of her MPN, and because, in addition to other factors, Everest was affiliated with College Loan Corporation by contract and business arrangement at the time her FFEL loans were originated.

55. On November 7, 2017, through counsel, Plaintiff received a letter from ECMC providing six pages of documents in response to her October 11, 2016 request for records.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

56. On November 18, 2016, through counsel, Plaintiff learned that ECMC had certified her loans for offset under TOP, notwithstanding her timely objection and request for hearing.

57. On this same date, through counsel, Plaintiff learned that ECMC had placed a hold on the proposed wage garnishment pending resolution of her objections, and that ECMC had forwarded Plaintiff's objections to the Department for adjudication.

58. On November 21, 2016, through counsel, Plaintiff received a letter from ECMC stating its intention to proceed with collection activity. The letter did not specify whether "collection activity" referred to TOP or wage garnishment, or both. It stated, "If your client has any documentation demonstrating the balance is not owed, she must submit this documentation to ECMC for review."

59. On November 22, 2016, through counsel, Plaintiff confirmed that ECMC had received her objections to wage garnishment and request for hearing, and that the garnishment was on hold. With respect to TOP, ECMC requested that Plaintiff resend her objection and request for hearing, which Plaintiff did through counsel the same day.

60. On December 15, 2016, Plaintiff learned, through counsel, that ECMC had halted the TOP offset. ECMC advised that it would not adjudicate the enforceability of Plaintiff's loans, because only the Department could make that determination.

61. On this same date, ECMC confirmed that it had forwarded Plaintiff's objection, request for hearing, and supporting materials to the Department for adjudication.

62. In late December, 2016, Plaintiff completed and submitted to the Department an attestation form designed by the Department for use by individuals who had borrowed student loans in order to attend a school operated by Corinthian

Colleges, who wished to assert that school misconduct provided a defense to the repayment of their loans.

63. On January 30, 2017, the Department sent Plaintiff, through counsel, a letter denying her objection to administrative wage garnishment. The letter was sent by Federal Student Aid, Borrower Services, Customer Care Group, located in Chicago, Illinois.

64. The letter is titled "Administrative Wage Garnishment Hearing Decision," and states:

> This letter is to present the findings of the recent written records hearing requested by you on behalf of your client [sic] objection to collection of a defaulted student loan account held by the Educational Management Corporation (ECMC) through wage garnishment action. This decision was rendered by the U.S. Department of Education (the Department) after careful review of your arguments and all available record related to your client's account, including those submitted by you and those maintained by ECMC. These findings are conclusive and represent the Department's final decision on your client [sic] objections. If you disagree with this decision, you may have this decision reviewed by bringing a lawsuit in Federal District Court.

65. The letter identifies "File documents provided by ECMC" as the "Evidence Considered" by the Department.

66. The "Decision" is that "[t]he Department has determined that your client's account is subject to collection through administrative wage garnishment (AWG) at 15% of your disposable pay."

67. The "Reason for Decision" is stated in the letter, in its entirety, as:
> Your client objected that she believe [sic] that her loans are not an enforceable debts [sic]. On November 14, 2016, ECMC explained to you and your client why these loans were enforceable and

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

>they had addressed your concerns and enclosed copy of the borrower's promissory notes. Because ECMC holds the promissory note(s) and other and other [sic] records supporting the existence of the debt, the borrower has the burden to prove that the debt is not owed. The Promissory note that forms the basis of this debt is a contract between the borrower and the lender, and any subsequent holder of the promissory note. Please have the borrower establish a repayment arrangement to avoid the possibility of wage garnishment with ECMC's Internal Collection Department at 800-367-1589, whereas the Department finds that the borrower [sic] student loan debt is still legally enforceable; therefore the borrower objection is denied.

68. ECMC was copied on this letter.

69. On information and belief, on February 13, 2017, ECMC sent a letter to Plaintiff's employer, IPPG, directing the employer to begin garnishing 15% of Plaintiffs' wages.

70. The total balance on the FFEL loans subject to administrative wage garnishment is approximately $14,500.

71. On information and belief, on or before February 17, 2017, IPPG instructed its third-party payroll administrator to garnish Plaintiffs' wages effective immediately.

## CAUSE OF ACTION:

### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

72. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73. Plaintiff asks this court to exercise review over, and set aside Defendant's denial of her objection to wage garnishment, pursuant to the Administrative Procedure Act.

74. The denial of Plaintiffs' objection to wage garnishment constitutes a final agency action reviewable under the Administrative Procedure Act.

75. Defendant denied Plaintiff's objection without providing the oral hearing requested and required by Defendant's regulations.

76. Defendant did not provide Plaintiff with an explanation of its decision sufficient to inform her of its rationale for denying the oral hearing and her objection to the garnishment on the ground that her loan is not legally enforceable.

77. Defendant did not consider, or if it did consider, did not explain its decision in reference to, the evidence that Plaintiff submitted regarding the legal enforceability of her debt.

78. Defendant's determination that Plaintiff's debt is legally enforceable is arbitrary, capricious, and contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and order for relief as follows:

A. Finding that the Defendant's final decision regarding the administrative wage garnishment of Plaintiff's debt violates the Administrative Procedure Act;

B. Striking or setting aside Defendant's final decision regarding the administrative wage garnishment of Plaintiff's debt;

C. Ordering the Defendant to withdraw authority for the administrative garnishment of Plaintiff's wages;

D. Ordering the Defendant to provide Plaintiff a hearing in which to present evidence regarding her challenge to the legal enforceability of her debt;

E. Ordering Defendants to pay the cost of this action, together with reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), as determined by the

Court; and

F.    Granting such other and further relief as the Court may deem just and proper.

Dated: February 23, 2017

Respectfully Submitted,

/s/ *Deanne B. Loonin*

Deanne B. Loonin

Eileen M. Connor
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiff Sarah Dieffenbacher*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF