DEANNE B. LOONIN (SBN 156733)
dloonin@law.harvard.edu
EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*Pro Hac Vice*)
tomerrill@law.harvard.edu
ALEC P. HARRIS (*Pro Hac Vice*)
aharris@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

ROBYN C. SMITH (SBN 165446)
rsmith@lafla.org
LEGAL AID FOUNDATION OF LOS ANGELES
5228 Whittier Blvd.
Los Angeles, CA 90022
Tel.: (213) 640-3906
Fax: (213) 640-3911

*Attorneys for Plaintiff*
SARAH DIEFFENBACHER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH DIEFFENBACHER,<br><br>    *Plaintiff*,<br><br>    v.<br><br>BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>    *Defendant*. | Case No.: 5:17-cv-00342-VAP-KK<br><br>**PLAINTIFF'S BRIEF TO SHOW CAUSE THAT THIS COURT HAS JURISDICTION** |

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

ARGUMENT ......................................................................................................4

    I.     This dispute presents a live case or controversy. .......................................4

    II.    The challenged agency action remains final and reviewable. ....................6

    III.   The Secretary cannot divest this Court of jurisdiction by reopening her final decision...................................................................................9

    IV.   This Court should preserve its own resources, safeguard the rule of law, and protect Ms. Dieffenbacher by rejecting the Secretary's maneuvers. ..................................................................................12

CONCLUSION................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. Spear*, 520 U.S. 154 (1997) ...........................................................................6

*Blincoe v. FAA*, 37 F.3d 462 (9th Cir. 1994) ..............................................................7

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) .............................................6

*Cerullo v. Derwinski*, 1 Vet. App. 195 (Vet. App. 1991)....................................9, 12

*Church v. United States*, No. CV 12-3990 GAF (SSX), 2013 WL 12064271 (C.D. Cal. May 15, 2013) ...................................................................11

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) .........................................................5

*Cochran v. Birkel*, 651 F.2d 1219 (6th Cir. 1981)......................................................9

*Doctors Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672 (7th Cir. 2010)................................................................................................ 9, 12, 13

*Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008)......................................................................................7

*Flanagan v. Arnaiz*, 203 F.3d 830, 1999 WL 1128641 (9th Cir. 1999)..................11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .................................................................................................4, 5

*Goede v. Colvin*, No. 1:09-CV-01777-SMS, 2013 WL 1731070 (E.D. Cal. Apr. 22, 2013).......................................................................................9, 10

*Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417 (6th Cir. 2016)....................................................................................................................6

*Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013)...................................6

*Jackson v. Nicholson*, 449 F.3d 1204 (Fed. Cir. 2006) .............................................9

*Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015)..............................................12

*Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009)................................13

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ...............................................................5

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993) .......................................................................5

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006) ........................................................................................... 6, 7, 8

*Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499 (9th Cir. 1995) ................................ 7

*Otero v. Johnson*, No. CIV 16-090-TUC-CKJ, 2016 WL 6476292 (D. Ariz. Nov. 2, 2016) ........................................................................................ 9, 10

*Pebble Ltd. P'ship v. EPA*, 604 F. Appx. 623 (9th Cir. 2015) ................................. 6

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ........................................................ 6

*True Capital Mgmt., LLC v. U.S. Dep't of Homeland Sec.*, No. 13-261 JSC, 2013 WL 3157904 (N.D. Cal. June 20, 2013) ............................................ 11

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ........................................................................... 5

**Statutes**

5 U.S.C. § 704 ........................................................................................................ 6, 12

20 U.S.C. § 1087e(a)(1) ............................................................................................. 8

**Regulations**

34 C.F.R. § 34.8(a) ..................................................................................................... 8

34 C.F.R. § 34.12 ...................................................................................................... 10

34 C.F.R. § 34.26(a)(1) ............................................................................................ 10

34 C.F.R. § 682.410(b)(9)(i)(E) ................................................................................. 8

34 C.F.R. § 682.410(b)(9)(i)(O) .............................................................................. 10

34 C.F.R. § 685.206(c) .............................................................................................. 8

Over the course of two-and-a-half years, Plaintiff Sarah Dieffenbacher has invoked every available administrative remedy in order to contest the legal enforceability of her student loans, only for the Defendant, the Secretary of Education, to evade her contention at every turn. Ten months ago, the Secretary issued a final order denying Ms. Dieffenbacher's objection to involuntary collection on the grounds that her loans are not enforceable. Now, notwithstanding a Court order denying her request for a remand, the Secretary has *sua sponte* and irregularly reopened administrative proceedings and deferred action for at least another six months. In so doing, the Secretary continues to deny any obligation to consider and contend with the evidence Ms. Dieffenbacher submitted in her objection to the involuntary collection of her loans. This maneuver is intended to thwart judicial review and deprive Ms. Dieffenbacher of a legally sufficient resolution of her objection. It fails because a live and justiciable controversy exists between Ms. Dieffenbacher and Defendant, the challenged agency action remains final and reviewable, and the agency lacks legal authority to reopen her decision under these circumstances.

## BACKGROUND

Ms. Dieffenbacher incurred approximately $50,000 in federal student loan debt, including the $14,500 at issue in this suit, to attend Everest College-Ontario Metro ("Everest"), a fraudulent for-profit school. Doc. No. 1 at 11; Doc. No. 2 at 5. After being unable to find a job in her field of study and discovering the full extent of Everest's fraud, Ms. Dieffenbacher submitted to the Secretary a ten-page *pro se* application for loan discharge on March 28, 2015. Doc. No. 1 at 6; *see also* Doc. No. 2 at 6. Ms. Dieffenbacher's loans defaulted while she awaited a response from the Department. Doc. No. 1 at 6.

A year-and-a-half after her *pro se* application, Ms. Dieffenbacher received notice of proposed administrative wage garnishment from Educational Credit Management Corporation ("ECMC"), the guaranty agency for her federal student

1

PLAINTIFF'S BRIEF TO SHOW CAUSE THAT THIS COURT HAS JURISDICTION

loans. *Id.* at 6–7. In response, Ms. Dieffenbacher submitted, through counsel, a full objection to wage garnishment and the enforceability of her loans. *Id.* at 7; *see also* Doc. No. 2-4 at 31–97; Doc. No. 2-5 at 1–140; Doc. No. 2-6 at 1–103. Her full objection was timely. Doc. No. 1 at 7. It included a 29-page letter explaining the legal basis of her objection, and 254 pages of exhibits, including records and evidence from the Attorney General of California that documented misconduct by Everest and its parent company. *Id.*; *see also* Doc. No. 2-4 at 31–97; Doc. No. 2-5 at 1–140; Doc. No. 2-6 at 1–77. ECMC referred her full objection to garnishment and legal enforceability to the Secretary of Education for adjudication. Doc. No. 1 at 9.

On January 30, 2017, the Secretary issued an Administrative Wage Garnishment Hearing Decision ("Final Decision") denying her full objection. Doc. No. 2-6 at 100. The Final Decision concludes that her loans are "still legally enforceable" and "subject to collection through administrative wage garnishment" *Id.* at 100–01. The Decision states that its findings are "conclusive" and "represent the Department's final decision on [Ms. Dieffenbacher's] objections." *Id.* at 100. It identifies "File documents provided by ECMC" as the only evidence considered, and invites Ms. Dieffenbacher to "have this decision reviewed by bringing a lawsuit in Federal District Court." *Id.* Two weeks later, ECMC initiated garnishment, Doc. No. 1 at 11, and on February 23, 2017, Ms. Dieffenbacher filed this suit to stop it. *Id.* at 1.

In response to Ms. Dieffenbacher's lawsuit, the Secretary filed a motion for voluntary remand so that she could "reconsider and re-issue," Doc. No. 25 at 4, the Final Decision within 90 days, *id.* at 2. After briefing and argument, the Court denied the motion, finding no "substantial or legitimate concern guiding [the] request for a remand," Doc. No. 31 at 6, and concluding that the request appeared to be a "frivolous," "bad faith" "attempt to evade judicial review." *Id.* at 6–7. However, the Court agreed to hold this case in abeyance for 90 days to give the

Secretary "an opportunity to make a final determination" on the enforceability of Ms. Dieffenbacher's student loans, in light of the evidence submitted in her full objection. *Id.* at 7. The Court warned that if Defendant did not issue a final decision within 90 days, "this Court will proceed to consider the issue of enforceability on the merits." *Id.*

Seven days later, on June 15, 2017, the Secretary issued an "Interim Decision" purporting to "withdraw" the Final Decision because it did not consider Ms. Dieffenbacher's *pro se* application. Doc. No. 33-1 at 2. Like the Final Decision, the Interim Decision identifies "File documents provided by ECMC" as "evidence considered." *Id.* at 1. Unlike the Final Decision, the Interim Decision also lists Ms. Dieffenbacher's 2015 *pro se* application as evidence considered. *Id.* The Decision makes no mention of Ms. Dieffenbacher's full objection. *Id.* It does not purport to provide Ms. Dieffenbacher with the required hearing on her objection. *Id.* It makes no determination regarding the enforceability of Ms. Dieffenbacher's loans, stating only that "[o]nce the review of [Ms. Dieffenbacher's] borrower defense application [i.e., the *pro se* application] is complete, the Department will issue a final agency decision regarding the enforceability of [her] student loans held by the Department" and that "[n]o wage garnishment on these loans will be initiated until the review . . . is complete." *Id.* at 1–2. The Secretary did not notify the Court of her Interim Decision at the time.

Three months later, on September 7, 2017, the Secretary filed her mandated Status Report. Doc. No. 32. The Status Report notifies the Court of the Secretary's Interim Decision but does not disclose the Interim Decision itself. *Id.* at 2. The Report informs the Court and Ms. Dieffenbacher that the Department has given itself six additional months—until March 1, 2018—to make a decision regarding legal enforceability. *Id*. The Department's justification for additional delay is that it will allow the Department "to issue a decision with regards to Ms. Dieffenbacher's Borrower Defense claims . . . as part of a larger group of Borrower Defense

3

PLAINTIFF'S BRIEF TO SHOW CAUSE THAT THIS COURT HAS JURISDICTION

decisions regarding similar claims." Doc. No. 32-2 at 2. It does not explain in what way the claims are similar or why they must be considered together. The Report states that all of Ms. Dieffenbacher's federal student loans have been assigned to the Department, that the loans have been placed in forbearance status,[1] and that interest will be forgiven, starting a year after Ms. Dieffenbacher's *pro se* application. Doc. No. 32 at 2–3. The Report references only Ms. Dieffenbacher's 2015 *pro se* application. *Id.* at 2.

On September 22, 2017, this Court ordered parties to show cause "why this case should not be dismissed for lack of subject matter jurisdiction." Doc. No. 37 at 2. Today, Ms. Dieffenbacher's loans remain pending. Other than the Final Decision, she has received no decision regarding the legal enforceability of her loans and no response to her full objection.

## ARGUMENT

### I. This dispute presents a live case or controversy.

As an initial matter, there is no question that the ongoing dispute between Ms. Dieffenbacher and the Secretary presents a live case or controversy within this Court's constitutional authority. Ms. Dieffenbacher has standing and her case is not moot. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both . . . standing and . . . mootness doctrine . . . .").

Ms. Dieffenbacher has standing to litigate this case. The Article III standing requirement requires a litigant demonstrate that she has suffered "concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress

---

[1] This action contradicts the Secretary's representation to the Court that "Plaintiff's privately-held debt . . . cannot be placed in forbearance or stopped collection status." Doc. No. 27 at 3.

4

that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). Ms. Dieffenbacher's ongoing travails at the hands of the Secretary easily satisfy this "irreducible minimum." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). This case began when Ms. Dieffenbacher came within days of illegal wage garnishment that would have threatened homelessness for herself and her four children. *See* Doc. No. 2-4 at 61–70. Notwithstanding the Secretary's Interim Decision, Ms. Dieffenbacher's loans remain outstanding and defaulted, and they continue to harm her consumer credit and emotional wellbeing. *Id.* at 69. All the while, wage garnishment remains an imminent threat. Doc. No. 33-1 at 2 ("[n]o wage garnishment on these loans will be initiated until . . . ."). These injuries are concrete, particularized, ongoing, traceable to the Secretary, and redressable by the Court.

The Secretary's Interim Decision did not moot Ms. Dieffenbacher's case. Mootness occurs "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). By its own terms, the Secretary's Interim Decision creates just such an expectation by promising "no wage garnishment . . . until" the Secretary issues yet another decision, Doc. No. 33-1 at 2, "on or before March 1, 2018," Doc. No. 32 at 2. To the extent any suggestion of mootness remains, Ms. Dieffenbacher's case falls squarely within the well-known exception to mootness for instances of voluntary cessation. This exception provides that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993), unless the defendant can overcome the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Laidlaw*, 528 U.S. at 190. The Secretary can make no such showing because a reasonable expectation remains that the Secretary will attempt to garnish Ms.

1  Dieffenbacher's wages, and that in so doing she will not consider any objection on
2  the grounds of legal enforceability. This case remains on firm constitutional
3  footing.[2]

## II. The challenged agency action remains final and reviewable.

While not a constitutional requirement, the concept of finality is a "pragmatic" and "practical" requirement that applies to both appellate-court review of trial-court decisions and to judicial review of agency action. *Brown Shoe Co. v. United States*, 370 U.S. 294, 307 (1962). In Administrative Procedure Act ("APA") cases, this requirement has a statutory basis in 5 U.S.C. § 704, which provides for judicial review of "final agency action for which there is no other adequate remedy."[3] For an agency action to be final, the action should (1) "mark the consummation of the agency's decisionmaking process," and (2) "be one by which rights or obligations have been determined or from which legal consequences will flow." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). The focus of administrative finality is the "practical and legal effects of agency action."

---

[2] Although this case is not currently moot, it is of course well within the Secretary's power to moot the case by discharging Ms. Dieffenbacher's loans or rendering a decision on her full objection after providing a lawful hearing.

[3] Although courts in the Ninth Circuit have assumed that finality in APA cases is jurisdictional, several other circuits that have considered the issue more closely have determined that finality is a non-jurisdictional element of an APA claim. *See, e.g.*, *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 (6th Cir. 2016); *Iowa League of Cities v. EPA*, 711 F.3d 844, 863 n.12 (8th Cir. 2013); *Trudeau v. FTC*, 456 F.3d 178, 183–85 (D.C. Cir. 2006). Recently, the Ninth Circuit has indicated its openness to the non-jurisdictional view. *Pebble Ltd. P'ship v. EPA*, 604 F. Appx. 623, 625–26 (9th Cir. 2015) (Watford, J., concurring) ("Our court has previously indicated (albeit without analysis) that 5 U.S.C. § 704's requirement of final agency action is jurisdictional . . . . But in my view the D.C. Circuit has persuasively explained why our court's precedent on this point is wrong." (citing *Trudeau*)). Regardless, as explained below, this case satisfies the finality requirement.

*Id.* Thus, the test must be interpreted "in a pragmatic and flexible manner," *id.* (quoting *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir. 1995)), and "[a]n agency's characterization of its own action['s finality] is not 'determinative,'" *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 592 n.6 (9th Cir. 2008) (quoting *Blincoe v. FAA*, 37 F.3d 462, 464 (9th Cir. 1994).

There can be no dispute that the Final Order constituted reviewable agency action satisfying both prongs of the test for finality. First, the Final Order marked the consummation of the Secretary's decisionmaking process because, by its own terms, it constituted a "conclusive . . . final decision on [Ms. Dieffenbacher's] objections," and invited judicial review. Doc. No. 2-6 at 100 ("If you disagree with this decision, you may have this decision reviewed by bringing a lawsuit in Federal District Court."). Second, the Final Decision imposed significant obligations and legal consequences on Ms. Dieffenbacher, including (1) a denial of her objections to the legal enforceability of her loans, *id.* at 101 ("the borrower [sic] objection is denied"), (2) an affirmation of her legal duty to repay the loans, *id.* ("the Department finds that the borrower [sic] student loan debt is still legally enforceable"), and (3) wage garnishment at a rate of "15% of . . . disposable pay," *id.* at 100.

The Final Decision remains final and reviewable, notwithstanding the Secretary's Interim Decision. As a threshold matter, the Secretary's characterization of her Interim Decision as a "decision" and as a "withdraw[al]" of the Final Decision is not determinative of finality. *Fairbanks*, 543 F.3d at 592 n.6. When considered under the two-part finality test, it is clear that the Secretary's Final Decision remains reviewable. First, the Final Decision remains the consummation of the Secretary's decisionmaking with respect to Ms. Dieffenbacher's full objection. Nowhere in her Interim Decision or her Status Report does the Secretary address or even refer to Ms. Dieffenbacher's full

1 objection, including the 29-page letter and 254 pages of exhibits. Instead, the
2 Interim Order states that the Department "failed to consider" only Ms.
3 Dieffenbacher's *pro se* application and lists only that application as new evidence
4 considered. Doc. No. 36-1 at 1–2. The Secretary's Status Report reiterates these
5 statements. Doc. No. 32 at 2. Ms. Dieffenbacher challenged the Final Decision as
6 arbitrary and capricious and initiated this lawsuit because the Secretary failed to
7 consider her full objection to the legal enforceability of her loans, submitted in
8 course of garnishment proceedings. That failure persists.[4]

9     Second, the challenged Final Decision continues to subject Ms.
10 Dieffenbacher to legal and practical consequences sufficient for the second finality
11 prong. Agency action satisfies that prong if it "has a direct and immediate effect on
12 the day-to-day operations of the subject party, or if immediate compliance [with its
13 terms] is expected." *Or. Nat. Desert Ass'n*, 465 F.3d at 982 (internal quotations
14 omitted). Despite the Interim Order, legal consequences continue to flow from the
15 Final Order. In particular, the Final Order's (1) denial of Ms. Dieffenbacher's full
16 objection and (2) affirmation of the legal enforceability of her loans, still persist.
17 These legal determinations require "immediate compliance" and continue to have
18 "direct and immediate" effects on Ms. Dieffenbacher's life, including adverse
19 credit reporting, loss of financial aid eligibility, and emotional distress. For all

---

[4] The Secretary has a clear obligation to consider Ms. Dieffenbacher's full objection. This obligation arises from wage garnishment provisions, *see, e.g.*, 34 C.F.R. § 682.410(b)(9)(i)(E)(1) (providing for hearing on "any objection regarding the existence, amount, or enforceability of the debt" for FFEL loans); *see also* 34 C.F.R. § 34.8(a) (providing the same for Direct loans), and borrower defense provisions, *see* 34 C.F.R. § 685.206(c) (affirming right to raise borrower defense objections to legal enforceability "in any proceeding to collect" federal Direct Loans, including "wage garnishment proceedings"); *see also* 20 U.S.C. § 1087e(a)(1) ("Unless otherwise specified in this part, [Direct] loans made to borrowers . . . shall have the same terms, conditions, and benefits . . . as [FFEL] loans . . . .").

these reasons, Defendant's Final Decision remains final, and thus reviewable, agency action.

### III. The Secretary cannot divest this Court of jurisdiction by reopening her final decision.

The "general rule" is that an agency "may not divest a federal court of jurisdiction by unilaterally reopening its administrative proceedings" once judicial review has commenced. *See Otero v. Johnson*, No. CIV 16-090-TUC-CKJ, 2016 WL 6476292, at *8 (D. Ariz. Nov. 2, 2016). "The reason is simple: otherwise, 'a litigant could temporarily deprive the court of jurisdiction at any and every critical juncture.'" *Goede v. Colvin*, No. 1:09-CV-01777-SMS, 2013 WL 1731070, at *1 (E.D. Cal. Apr. 22, 2013) (quoting *Cochran v. Birkel*, 651 F.2d 1219, 1222 (6th Cir. 1981)). This rule applies across statutory frameworks, and has been applied to, *inter alia*, immigration appeals, *see Otero*, 2016 WL 6476292, at *8, Social Security appeals, *see Goede*, 2013 WL 1731070, at *1, Medicare appeals, *Doctors Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 677 (7th Cir. 2010), and veterans appeals, *see Jackson v. Nicholson*, 449 F.3d 1204, 1208 (Fed. Cir. 2006); *Cerullo v. Derwinski*, 1 Vet. App. 195, 201 (Vet. App. 1991).

This rule so strongly favors judicial review that it often overrides an agency's regulatory self-authorization to reopen proceedings. For instance, in *Otero v. Johnson*, the plaintiff sued the United States Citizenship and Immigration Services under the APA for denying her adjustment of status application. 2016 WL 6476292 at *1, *3. The agency subsequently reopened the plaintiff's application and argued that this reopening rendered the action no longer final, terminating the court's subject-matter jurisdiction. *Id.* at *3. The agency noted that a provision of its regulations permitted it to reopen proceedings *sua sponte*. *Id.* at *5. Notwithstanding that provision, the Court concluded that "the general rule that an agency may not divest a federal court of jurisdiction by unilaterally reopening its administrative procedures" applied and "nullifie[d]" the agency's actions, even

9

though the action was specifically authorized by regulation. *Id.* at *5, *8. Similarly, in *Goede v. Colvin*, the court concluded, "Although the agency reserves the right to reopen a decision which is 'otherwise final and binding' at any time for certain reasons [in its regulations], it loses jurisdiction to do so once a claimant appeals, no matter what its regulations say." 2013 WL 1731070, at *1.

The general rule applies even more forcefully in this case, where neither statute nor Department regulations authorize *sua sponte* reopening of final decisions on involuntary collection pending judicial review. Like the plaintiff in *Otero*, Ms. Dieffenbacher sought judicial review of a final agency action pursuant to the APA, only to face an attempt by the agency to reopen administrative proceedings in order to "deprive the court of jurisdiction" at a "critical juncture." *Otero*, 2016 WL 6476292, at *5. Unlike in *Otero*, here, the Secretary not only lacked approval from the Court, she faced an express denial of her request for voluntary remand in the form of a Court order. And unlike *Otero*, in this case, the Secretary has no statutory or regulatory authority to reopen administrative proceedings. *Cf.* 34 C.F.R. § 34.12 (allowing for reconsideration of a wage garnishment hearing decision only when requested by the borrower on the basis of financial hardship or new evidence).[5] Under these circumstances, the Secretary may not reopen her final decision and her attacks on this Court's jurisdiction are "nullifie[d]." *Otero*, 2016 WL 6476292, at *5.

Although some courts in the Ninth Circuit have permitted reopening in the immigration context, by implication these decisions support judicial review in Ms.

---

[5] The Department's regulation regarding "ending garnishment," which provides that "[a] garnishment order we issue is effective until we rescind the order," 34 C.F.R. § 34.26(a)(1), does not grant the Secretary authority to reopen wage garnishment hearing proceedings because by its own terms, it applies to a "garnishment order" issued to an employer, not a garnishment hearing "decision" rendered for a borrower. *Compare* 34 C.F.R. § 34.26(a)(1), *with id.* § 34.12. *See also* 34 C.F.R. § 682.410(b)(9)(i)(O) (setting forth analogous rescission provision for guaranty agencies collecting FFEL loans).

Dieffenbacher's case because they involved express regulatory authority and lacked any finding that the agency was acting in bad faith or delaying to evade judicial review. For example, in *Net-Inspect, LLC v. U.S. Citizenship & Immigration Services*, No. C14-1514JLR, 2015 WL 880956 at *4–5 (W.D. Wash. Mar. 2, 2015), the court dismissed an appeal of an immigration decision pursuant to the APA, citing agency regulations permitting reopening. However, the *Net-Inspect* court explicitly recognized that APA law did not mandate its outcome, and noted that its "ruling . . . might very well be different" if the agency had "attempt[ed] to avoid judicial review under the APA by repeatedly reopening a challenged decision." *Id.* at *6 n.7. The court declined to assess that scenario because "there [was] no evidence of delay" by the agency. *Id.* Unlike in *Net Inspect*, here, the Secretary has repeatedly delayed adjudication, lacks statutory or regulatory authority to reopen, and disregarded a Court order that denied her request to reopen because it appeared "both frivolous and in bad faith." Doc. No. 31 at 7. The Secretary's bad faith and her apparent "attempt[s] to circumvent this Court's order," *see* Doc. No. 37 at 2, have become law of the case. *See Flanagan v. Arnaiz*, 203 F.3d 830, 1999 WL 1128641 at *1 (9th Cir. 1999) (concluding finding of bad faith had become law of the case). This track record distinguishes the instant case from *Net-Inspect* and strongly counsels in favor of prohibiting the Secretary from reopening her Final Decision in this case.[6]

---

[6] For similar reasons, the decisions in *Church v. United States*, No. CV 12-3990 GAF (SSX), 2013 WL 12064271 (C.D. Cal. May 15, 2013), and *True Capital Management, LLC v. U.S. Department of Homeland Security*, No. 13-261 JSC, 2013 WL 3157904 (N.D. Cal. June 20, 2013), support jurisdiction in this case. *See Church*, 2013 WL 12064271, at *3, *7 (finding finality lacking where agency's reopening was authorized by regulation and reopening had "adequately addressed" plaintiffs' concerns, but ultimately staying case pending the conclusion of administrative proceedings); *True Capital*, 2013 WL 3157904, at *4 (finding finality lacking after rebutting plaintiff's allegations of agency delay and

**IV. This Court should preserve its own resources, safeguard the rule of law, and protect Ms. Dieffenbacher by rejecting the Secretary's maneuvers.**

The general rule against *sua sponte* reopening effectuates judicial efficiency, fulfills the purpose of judicial review, and protects individuals subject to agency action. First, courts have repeatedly identified judicial efficiency as a strong reason to prohibit an agency from unilaterally reopening its final decision during judicial review. For example, in *Doctors Nursing & Rehabilitation Center v. Sebelius*, the Seventh Circuit emphasized that the general rule protects judicial efficiency: "[i]f the agency became concerned that a Court . . . might issue a decision adverse to its interests, it could reopen its proceedings and yank the case out of the courts, regardless of the amount resources that had already been expended" or the circumstances of litigants. 613 F.3d at 679; *see also Cerullo*, 1 Vet. App. at 197 (prohibiting *sua sponte* reopening because it "raises the possibility that a court . . . will expend extensive judicial time on a case only to have agency reconsideration nullify its efforts"). *Sebelius* aptly states a concern raised by this case: after nearly a year of litigation, the Secretary now seeks to "yank the case out of the court[]" because she faces "a decision adverse to [her] interests." 613 F.3d at 679. This Court need not allow the Secretary to nullify its efforts.

Second, courts safeguard the purpose of judicial review and the rule of law by limiting *sua sponte* reopening. The APA provides judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. It embodies a "strong [Congressional] presumption" in favor of judicial review of agency action. *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015). If, however, agency actions are never final and thus never reviewable because agencies may reopen their decisions at any time, then the APA serves no purpose. *Cf. Cerullo v. Derwinski*, 1 Vet. App., at 198 (noting that the notion that a

---

emphasizing the special "jurisdictional issues which arise in the immigration context," but ultimately retaining jurisdiction pending final agency decision).

reopened agency "decision becomes nonfinal even if on appeal . . . implies that a decision is never really final"). In this way, allowing the Secretary to reopen *sua sponte* would undermine the very purpose of the APA and the rule of law. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 920 (9th Cir. 2009) (emphasizing that rule of law requires effective APA judicial review).

Third, refusing to permit agencies to reopen protects individuals subject to agency action. In particular, doing so prevents agencies from "manipulat[ing] federal jurisdiction to frustrate litigants by increasing the time and expense required to pursue claims." *Sebelius*, 613 F.3d at 679. This concern is paramount in this case. Ms. Dieffenbacher last attended Everest in 2012. Doc. No. 2-4 at 61. She has challenged the enforceability of her debt four times over the course of two and a half years, including in the context of wage garnishment, Doc. No. 1 at 6–7, 9. When the Secretary erroneously and unlawfully denied Ms. Dieffenbacher's objection to wage garnishment, the Secretary specifically instructed Ms. Dieffenbacher to seek review "by bringing a lawsuit in Federal District Court." Doc. No. 2-6 at 100. Yet now, faced with a lawsuit and the prospect of an unfavorable decision, the Secretary *sua sponte* and irregularly reopened administrative proceedings and deferred action for at least another six months, despite a lack of statutory or regulatory authority, and a clear Court order prohibiting her conduct. This Court should not permit the Secretary to do so.

## CONCLUSION

For all of the above reasons, this Court has jurisdiction to review the Final Decision of the Secretary.

Dated: October 19, 2017

Respectfully submitted,

|     |     |
| --- | --- |
| 1   | /s/ *Alec P. Harris* |
| 2   | Alec P. Harris |
| 3   | Eileen M. Connor |
|     | Deanne B. Loonin |
| 4   | Toby R. Merrill |
| 5   | LEGAL SERVICES CENTER OF |
| 6   | HARVARD LAW SCHOOL |
|     | 122 Boylston Street |
| 7   | Jamaica Plain, MA 02130 |
| 8   | Tel.: (617) 390-3003 |
|     | Fax: (617) 522-0715 |

Robyn C. Smith
LEGAL AID FOUNDATION OF LOS ANGELES
5228 Whittier Blvd.
Los Angeles, CA 90022
Tel.: (213) 640-3906
Fax: (213) 640-3911

*Attorneys for Plaintiff Sarah Dieffenbacher*

Emerson Gordon-Marvin,
law student on the brief

14

PLAINTIFF'S BRIEF TO SHOW CAUSE THAT THIS COURT HAS JURISDICTION