DEANNE B. LOONIN (SBN 156733)
dloonin@law.harvard.edu
EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*Pro Hac Vice*)
tomerrill@law.harvard.edu
ALEC P. HARRIS (*Pro Hac Vice*)
aharris@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 522-3003
Fax: (617) 522-0715

ROBYN C. SMITH (SBN 165446)
rsmith@lafla.org
LEGAL AID FOUNDATION OF LOS
ANGELES
5228 Whittier Blvd.
Los Angeles, CA 90022
Tel.: (213) 640-3906
Fax: (213) 640-3911

*Attorneys for Plaintiff*
SARAH DIEFFENBACHER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH DIEFFENBACHER,<br><br>          *Plaintiff*,<br><br>     v.<br><br>BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>          *Defendant*. | Case No.: 5:17-cv-00342-VAP-KK<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

BACKGROUND .................................................................................................2

ARGUMENT ...................................................................................................10

I.     Plaintiff's claims are not moot...................................................10

  A.   *A decision from this Court would grant Plaintiff effective relief.* .............11

  B.   *The Adjudication Notice does not eliminate a reasonable expectation that the challenged conduct will recur.* ...........................................13

II.    The January 2017 decision remains final and reviewable........................16

III.   The Adjudication Notice does not impact the Court's jurisdiction or ability to provide a remedy. .......................................................20

CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Evans*, 371 F.3d 475 (9th Cir. 2004) .................................................14

*B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293
  (2015) ............................................................................................ 20, 23

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................17

*Commc'ns Telesystems Int'l. v. Cal. Pub. Util. Comm'n*, 196 F.3d
  1011 (9th Cir. 1999)...........................................................................23

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d
  586 (9th Cir. 2008).............................................................................17

*Ferreira v. Borja*, 93 F.3d 671 (9th Cir. 1996)................................. 17, 20

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC),*
  *Inc.*, 528 U.S. 167 (2000).............................................................. 14, 19

*Gregory v. Bowen*, 844 F.2d 664 (9th Cir. 1988)................................23

*Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995) ................................. 23, 24

*Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 657 F.3d 865 (9th Cir.
  2011)...................................................................................................13

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ....................13

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of*
  *Jacksonville*, 508 U.S. 656 (1993) ......................................................14

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir.
  2006)............................................................................................ 17, 18

*U.S. v. Alder Creek Water Co.*, 823 F.2d 343 (9th Cir. 1987)...............11

*Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) ......................................20

**Statutes**

20 U.S.C. § 1078-3...................................................................................16

20 U.S.C. § 1082.........................................................................................3

20 U.S.C. § 1087e .................................................................................3, 11

ii

20 U.S.C. § 1095a .................................................................................. 2, 11, 16

28 U.S.C. § 2201 ..............................................................................................5

5 U.S.C. § 702 ..................................................................................................5

Cal. Bus. & Prof. Code § 17200 ......................................................................3

Cal. Civ. Code § 1750 *et seq.* .........................................................................3

**Regulations**

34 C.F.R. § 30.70 .............................................................................................3

34 C.F.R. § 34.26 .............................................................................................6

34 C.F.R. § 682.209 .........................................................................................7

34 C.F.R. § 682.410 ....................................................................................6, 11

34 C.F.R. § 685.206 ........................................................................ 3, 11, 13, 21

34 C.F.R. § 685.220 .......................................................................................16

**Other Authorities**

U.S. Dep't of Educ., Federal Direct Consolidation Loan Application
    and Master Promissory Note .....................................................................15

U.S. Dep't of Educ., Final Regulations, Program Integrity: Gainful
    Employment, 79 Fed. Reg. 64,889 (Oct. 31, 2014) ..................................23

U.S. Dep't of Educ., Notice of Interpretation, 60 Fed. Reg. 37,768
    (July 21, 1995) ...........................................................................................16

iii

As this case nears resolution, Defendant has launched one last bid to avoid a decision from the Court on the merits. On February 28, 2018, the Department issued a "Borrower Defense Adjudication Notice" that purports to address Plaintiff's claims against the enforceability of her loans associated with Everest College. This Adjudication Notice addresses only Plaintiff's 2015 *pro se* borrower defense application, does not address the vast majority of facts or legal issues raised in Plaintiff's subsequent full objection to the legal enforceability of her loans submitted in response to wage garnishment and at issue in this case, and makes clear that the Department intends to continue to collect Plaintiff's federal student loans without *ever* addressing her evidence. Rather than defend its January 2017 decision by moving for summary judgment, Defendant has filed a motion to dismiss, asserting that Plaintiff's case is now moot and without final agency action to challenge in light of the Adjudication Notice.[1]

These arguments fail. This case is not moot because Plaintiff's injury—illegal collection of unenforceable loans, including by wage garnishment, over her meritorious objection—remains redressable by the Court and because the Adjudication Notice makes clear that this injury will continue to recur. Nothing has changed in the six months since the Court found that the challenged January 2017 decision remains final and reviewable. And the Adjudication Notice merits no preclusive effect in this case under both the doctrine of preclusion and the equities of the case at hand. For all of the above reasons, Plaintiff is entitled to a decision on the merits, and Defendant's motion to dismiss must be denied.

---

[1] Defendant's motion is contrary to the parties' stipulation to resolve this case by cross-motions for summary judgment. *See* Doc. No. 46 at 2–3 ("The parties . . . agreed that that they would stipulate to resolving the case by cross-motions for summary judgment . . . ."); *see also* Doc. No. 49 (setting deadline for cross-motions for summary judgment, as discussed at scheduling conference).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BACKGROUND

In October 2016, Plaintiff, Sarah Dieffenbacher, received a notice of proposed wage garnishment dated October 19, 2016. Doc. No. 48-2 ("AR") at 127.[2] This notice was issued by Educational Credit Management Corporation ("ECMC"), the guaranty agency for three of Plaintiff's FFEL loans. AR 127, 133. The notice stated that ECMC intended to garnish Plaintiff's wages in order to service the three defaulted FFEL loans, which totaled approximately $14,100 at the time. AR 127. The notice cited 20 U.S.C. § 1095a as authority for the garnishment, informed Plaintiff of her right "to request a hearing, within 30 days of this Notice, for any objection regarding the existence, amount, or enforceability of the loan(s)," *id.*, and provided a request for hearing form, AR 130.

On November 2, 2016, through counsel, Plaintiff submitted a timely objection to the proposed wage garnishment to ECMC. AR 10. On the form provided, Plaintiff marked as her "Reason[] Why You Object To Garnishment," that "I believe this loan(s) is not an enforceable debt in the amount stated for the reasons explained in the attached letter." AR 7, 9. Plaintiff also selected, "I want an in-person hearing." AR 7. Plaintiff submitted a 29-page letter explaining that her loans are not legally enforceable pursuant to borrower defense, along with 254 pages of exhibits in support of her claim to borrower defense. *See, e.g.*, AR 10, 38. This submission expressly provided "Borrower Information Requested by the Department of Education" for borrower defense applications. AR 37; *see also* AR 11 n.10. Plaintiff's exhibits included a sworn statement from her recounting her experiences in detail, AR 39–48; records corroborating her testimony, *see* AR 49–88; evidence from the Attorney General of California regarding violations of California law by Everest College and its parent corporation, Corinthian Colleges,

---

[2] Plaintiff repeats much of the background set forth in her Memorandum of Points and Authorities in Support of Motion for Summary Judgment here, where relevant, for the convenience of the Court.

2

Inc. ("Corinthian"), including sworn statements from other former Everest College students, AR 148–173; Doc. No. 2-5 at 98–140; Doc. No. 2-6 at 1–31; and legal materials supporting Plaintiff's right to assert her defense to repayment, Doc. No. 2-6 at 32–77.

Plaintiff incurred the loans noticed for garnishment, along with other federal and private student loans, when she attended Everest College-Ontario Metro, in Ontario, California ("Everest") between 2007 and 2012. AR 11. Plaintiff's letter and exhibits demonstrate that Everest violated the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and common law prohibitions on misrepresentation and fraud, AR 22–29; that these violations constitute a complete defense to repayment of her federal student loans from Everest, AR 29–34; and that Plaintiff is entitled to a full discharge of her loans, as well as other relief, AR 34–35 (citing 20 U.S.C. § 1087e (a)(1) (providing for parity between FFEL and Direct Loan terms and conditions); 34 C.F.R. § 685.206(c) ("In any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law."); 20 U.S.C. § 1082(a) (providing Secretary authority to compromise FFEL loans); 34 C.F.R. § 30.70(h) (same)).

In light of this defense to repayment, Plaintiff requested an in-person hearing to contest garnishment, withdrawal of the wage garnishment, cessation of all forms of collection, complete discharge of her loans, reimbursement of amounts paid, restoration of federal financial aid eligibility, and removal of all adverse credit reporting. AR 35.

In December 2016, ECMC referred Plaintiff's objection and hearing request to the U.S. Department of Education ("Department") for adjudication. *See* AR 3, 6.

On January 30, 2017, without affording Plaintiff the in-person hearing she requested, the Department issued an "Administrative Wage Garnishment Hearing

3

Decision" denying Plaintiff's objections to the legal enforceability of her loans and authorizing wage garnishment. AR 3. The January 2017 hearing decision states:

> This letter is to present the findings of the recent written records hearing requested by you on behalf of your client [sic] objection to collection of a defaulted student loan account held by the Educational Credit Management Corporation (ECMC) through wage garnishment action. This decision was rendered by the U.S. Department of Education (the Department) after careful review of your arguments and all available records related to your client's account, including those submitted by you and those maintained by ECMC. These findings are conclusive and represent the Department's final decision on your client [sic] objections.

*Id*. The hearing decision identifies "File documents provided by ECMC" as the "Evidence Considered" by the Department. *Id.*

The Decision concludes, "the Department finds that the borrower [sic] student loan debt is still legally enforceable" and that Plaintiff's "account is subject to collection through administrative wage garnishment (AWG) at 15% of . . . disposable pay." AR 3–4. The "Reason for Decision" is stated in the letter, in its entirety, as:

> Your client objected that she believe [sic] that her loans are not an enforceable debts [sic]. On November 14, 2016, ECMC explained to you and your client why these loans were enforceable and they had addressed your concerns and enclosed copy of the borrower's promissory notes. Because ECMC holds the promissory note(s) and other records supporting the existence of this debt, the borrower has the burden to prove that the debt is not owed. The promissory note that forms the basis of this debt is a contract between the borrower and the lender, and any subsequent holder of the promissory note. Please have the borrower establish a repayment arrangement to avoid the possibility of wage garnishment with ECMC's Internal Collection Department at 800-367-1589, whereas the Department finds that the borrower [sic] student loan debt is still legally enforceable; therefore the borrower objection is denied.

AR 4. Finally, the Hearing Decision states, "If you disagree with this decision, you may have this decision reviewed by bringing a lawsuit in Federal District Court." AR 3.

On February 23, 2017, Plaintiff filed this suit against Betsy DeVos, in her official capacity as Secretary of the Department, ("Defendant") pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. § 2201, to challenge the January 30, 2017 final administrative wage garnishment decision ("January 2017 decision"). Doc. No. 1. Plaintiff asserts that the January 2017 decision must be stricken as arbitrary, capricious, and in violation of the APA. *Id.* at 11–13. Along with her complaint, Plaintiff filed an application for a temporary restraining order because the impending garnishment threatened homelessness for Plaintiff and her four children. Doc. No. 2.

On March 2, 2017, in exchange for an agreement that "garnishment will remain suspended until final judgment is rendered in this civil action" the parties stipulated to a withdrawal of Plaintiff's application for a temporary restraining order. Doc. No. 11 at 2. Defendant filed with this stipulation a letter to Plaintiff's employer ordering "suspen[sion] [of] garnishment . . . until further notice" and further stating that garnishment order "does not expire" and "continues to exist on this individual." Doc. No. 11-1 at 3. The Court approved the parties' stipulation on March, 7, 2017. Doc. No. 18.

On May 8, 2017, Defendant filed a motion for voluntary remand so that she could "reconsider[] and re-issue[]," Doc. No. 25 at 4, the challenged wage garnishment decision within 90 days, *id.* at 2, "in a way that would not be arbitrary, capricious or contrary to law," *id.* at 4.

On June 5, 2017, Plaintiff received a second notice of impending wage garnishment. Doc. No. 30 at 2. Notwithstanding the stipulation prohibiting garnishment, this notice stated, "This letter serves as notice that Educational Credit

Management Corp . . . will order your employer to immediately withhold money from your pay . . . unless you take the action set forth in this notice." Doc. No. 30-1 at 2.

On June 8, 2017, the Court denied Defendant's motion for remand, finding no "substantial or legitimate concern guiding [the] request for a remand," and concluding that the request appeared to be a "frivolous," "bad faith" "attempt to evade judicial review." Doc. No. 31 6–7. However, the Court agreed to allow Defendant 90 days to "make a final determination" on the merits of Plaintiff's loan cancellation application. *Id.* at 7. The Court warned that, in the absence of a final decision, it would "proceed to consider the issue of enforceability on the merits." *Id.*

On June 15, 2017, Defendant issued an "interim" administrative wage garnishment decision ("Interim Decision") purporting to "withdraw" the January 2017 decision because "the evaluation of at least one element"—by implication, a separate borrower defense application submitted by Plaintiff without the assistance of counsel in March 2015—of her objection was "not complete." AR 1. The Department's Interim Decision was purportedly issued upon consideration of the March 2015 application and "[f]ile documents provided by ECMC." *Id.* The Interim Decision states, without explanation, that "[t]he defaulted FFEL student loan account previously held by ECMC has been assigned to the Department." *Id.*[3]

Assignment notwithstanding, the Department promised, in the Interim Decision, to "issue a final administrative wage garnishment hearing decision as soon as the review of all of your client's objections has been completed," AR 1,

---

[3] The certified administrative record filed by Defendant contains no explanation of the cause or effect of the assignment. It does not contain any indication that the garnishment order sent to Ms. Dieffenbacher's employer has been withdrawn. This order will not expire on its own terms. 34 C.F.R. § 682.410(b)(9)(i)(O); *accord* 34 C.F.R. § 34.26.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

and that "[n]o wage garnishment on these loans will be initiated until the review . . . is complete," AR 2. The Interim Decision does not discuss Plaintiff's borrower defense claim submitted in objection to wage garnishment and makes no determination regarding the enforceability of Plaintiff's loans. AR 1–2.

Defendant did not notify the Court of her Interim Decision until September 7, 2017, at which time Defendant filed a status report noting that "[i]n March 2015, Plaintiff applied for discharge of her student loan debt pursuant to the 'borrower defense' grounded in 34 C.F.R. § 682.209(g)," and representing that the Department "will issue a decision on Plaintiff's discharge application within six months (on or before March 1, 2018)." Doc. No. 32 at 2. The status report also does not address Plaintiff's borrower defense claim submitted in objection to wage garnishment. *See id.* at 1–3.

On September 22, 2017, the Court issued an order to show cause why this case should not be dismissed for lack of subject matter jurisdiction, in light of the Interim Decision. Doc. No. 37. The Court explained, "Plaintiff's concerns that Defendant is attempting to circumvent the Court's order are not lost on the Court," but questioned whether the Interim Decision divested the Court of jurisdiction to review the January 2017 decision. *Id.* at 2.

In response, Plaintiff argued that her case presents a live controversy because she continues to suffer concrete and particularized injury traceable to Defendant's decision that her loans are "still legally enforceable." AR 4; Doc. No. 38 at 8–10. Specifically, Plaintiff asserted that she experiences harm in the form of outstanding loan balances, adverse credit reporting, and the threat of garnishment, and that this harm could be redressed by a decision from the Court setting aside the January 2017 decision. Doc. No. 38 at 8–10. Plaintiff also argued that Defendant cannot moot this case by voluntary cessation because absent complete cancellation of her loans, Defendant cannot meet the high bar of showing that wage garnishment will never recur. *Id.* at 9–10. Plaintiff further argued that the January

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

2017 decision remains final and reviewable because it marks the consummation of Defendant's decisionmaking process regarding Plaintiff's full objection to the legal enforceability of her loans, and because the rejection of that borrower defense claim continues to impose significant legal consequences. *Id.* at 10–13. Finally, Plaintiff argued that Defendant cannot divest the Court of jurisdiction to review the January 2017 decision by unilaterally reopening administrative proceedings. *Id.* at 13–17.

On October 31, 2017, the Court vacated its order to show cause because it determined that it has jurisdiction to review the January 2017 decision. Doc. No. 40. The Court ordered Defendant to answer or otherwise respond to the complaint challenging the January 2017 decision within 20 days. *Id.*

On November 20, 2017, Defendant answered Plaintiff's complaint. Doc. No. 41. Defendant admitted that Plaintiff "asserted a borrower defense claim in objection to a proposed administrative wage garnishment in service of her federal student loans." *Id.* at 2, ¶ 3; Doc. No. 1 at 2, ¶ 3. Defendant also admitted that Plaintiff submitted "a 29-page letter explaining why [her] loans are not legally enforceable and 254 pages of exhibits" in support of her claim. Doc. No. 41 at 5, ¶ 49; Doc. No. 1 at 7, ¶ 49.

On January 12, 2018, Defendant filed the administrative record. Doc. No. 43. On February 9, 2018, Defendant refiled the record to add a certification statement. Doc. No. 48.

On February 12, 2018, the Court ordered the parties to argue cross-motions for summary judgment to resolve the case, as stipulated, no later than April 30, 2018. *See* Doc. No. 49.

On February 28, 2018, the Department mailed directly to Plaintiff a "Borrower Defense Claim—Adjudication Notice" ("Adjudication Notice"). Doc. No. 53-2. The Adjudication Notice purports to pertain to "claim number . . . BD150176" and to apply to all of Plaintiff's FFEL and Direct loans borrowed in

connection with Corinthian. *Id.* at 1–2. The Notice states that the Department "has approved your claim for forgiveness of your federal student loans under the borrower defense to repayment rule . . . based on the school's material misrepresentation(s) to you." *Id.* at 1.

The Adjudication Notice states that the Department intends to cancel 50% of Plaintiff's loans, explaining:

> The amount of loan relief that you will receive is based on the Department's assessment of the value of the education that you received. The Department has determined the value of your education by comparing the average earnings of students who attended your program(s) of study to the average earnings of students who graduated from similar programs at other schools that adequately prepare students for gainful employment. Further, if you enrolled in more than one program the relief that you will receive has been determined using the Department's assessed value of the education for the program relating to your approved claim that had the lowest earnings and that, therefore, yields the highest percentage of relief.

*Id.* The Notice advises Plaintiff that "[i]n order to receive loan forgiveness related to the outstanding balance of your FFEL loans, you must first consolidate these loans into a Direct Consolidation Loan. The Department cannot forgive your FFEL loans until you consolidate them." *Id.* at 2. The Notice does not place any time limitation on the Plaintiff's purported need to consolidate her FFEL loans. *See id.* Nor does it provide any information regarding the ability or procedures for Plaintiff to appeal the decision regarding the purported assessed value of her education or any other aspect of the adjudication. *See id.* at 1–3.

The Department has not issued any final wage garnishment hearing decision other than the final decision issued in January 2017.[4]

---

[4] On several occasions, undersigned counsel has requested clarification from counsel for Defendant regarding whether, as suggested, a final wage garnishment hearing decision would be issued, in light of the February 28, 2018 Adjudication Notice. On March 23, in conjunction with the conferral required by Local Rule 7-

On April 2, 2018, Plaintiff filed a motion for summary judgment, as stipulated. *See* Doc. Nos. 49, 52.

The same day, Defendant filed a motion to dismiss invoking Federal Rule of Civil Procedure 12(h)(3). Doc. No. 53. Defendant argues that by virtue of the June 2017 Interim Decision and February 2018 Adjudication Notice, this case is moot and there is no final and reviewable agency action. *Id.* at 3.

## ARGUMENT

### I.   Plaintiff's claims are not moot.

Defendant argues that this case is moot because the January 2017 decision "has been withdrawn," and the Department has now issued a separate decision on Plaintiff's March 2015 *pro se* loan cancellation application:

> Plaintiff's sole APA claim challenged the January 30, 2017 DOE decision as arbitrary and capricious because it seemingly determined that her student loan debt was legally enforceable even though Plaintiff had a pending application to discharge the debt. . . . That decision has been withdrawn, and there is no outstanding determination regarding the legal enforceability of Plaintiff's student loan debt since the February 28, 2018 decision was rendered. Accordingly, as there is no justiciable claim before this Court, Plaintiff's APA claim should be dismissed as moot.

*Id.* at 4–5.

Contrary to Defendant's assertion, the January 2017 decision did not "seemingly determine" that Plaintiff's student loans are legally enforceable; it *did determine* legal enforceability. AR 4 ("the Department finds that the borrower [sic] student loan debt is still legally enforceable"). And Plaintiff did not challenge that decision because it disregarded her pending *pro se* March 2015 loan cancellation application; Plaintiff challenged the January 2017 decision because it arbitrarily and capriciously denied her full objection to the legal enforceability of her loans in

---

3, counsel for Defendant stated that she was not aware of a forthcoming final administrative wage garnishment decision.

disregard of the unchallenged evidence of her borrower defense submitted in the wage garnishment proceedings. *See, e.g.*, Doc. No. 1 at 7–8, 11–12 (detailing full objection and challenging January 2017 decision in reference to that objection).

These mischaracterizations pervade Defendant's jurisdictional arguments. However, this case is not moot. A decision from the Court would grant Plaintiff effective relief from the Department's ongoing failure to rule on her full objection to the legal enforceability of her loans in a manner that is not arbitrary, capricious, and contrary to law and grant Plaintiff relief from the injury that stems from that failure. Moreover, absent judicial resolution, the challenged conduct is likely to recur in the future.

### A.  A decision from this Court would grant Plaintiff effective relief.

"A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *U.S. v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987). Plaintiff's case is not moot because the Court can provide Plaintiff with effective relief by ruling on her full application for loan discharge, which was properly before the Department and denied in the Department's January 2017 decision.

In her full objection, Plaintiff sought total cancellation of her loans and other relief because of her complete defense to repayment of her loans. *See, e.g.*, AR 14, 29, 35. Plaintiff has explained in detail why this application was unquestionably a borrower defense to repayment—i.e., a challenge to the legal enforceability of loans that, if successful, precludes collection in *any* context—properly submitted to the Department. Doc. No. 52-1 at 19–20 (citing 34 C.F.R. § 685.206(c)(1)(ii) (authorizing borrower defense claims in wage garnishment proceedings brought pursuant to 20 U.S.C. § 1095a); AR 127 (initiating garnishment against Plaintiff pursuant to 20 U.S.C. § 1095a); 20 U.S.C. § 1087e(a)(l) (stating parity principle between FFEL and Direct Loans); 34 C.F.R. § 682.410(b)(9)(i)(E)(1) (permitting borrowers to object to legal enforceability in garnishment proceedings)).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Defendant admits as much. Doc. No. 41 at 2, ¶ 3. There could be no more appropriate time to raise a borrower defense than in response to the sharp edge of the Department's collection spear—involuntary payment through wage garnishment. But the fact that a borrower defense is raised, appropriately, in objection to wage garnishment, does not make that defense any less a challenge to the loan itself. Plaintiff's contention is not that the loan is unenforceable *by wage garnishment*, but rather that it is not enforceable *at all*.

Yet throughout the course of this litigation, it has become clear that Defendant's position is that, having issued the January 2017 decision and then purportedly "withdrawn" it, the Department *never* has to consider *as a borrower defense* the evidence Plaintiff submitted in support of her full objection, including her 29-page letter and 254 pages of exhibits. According to Defendant, the Department cannot consider a borrower defense raised in an administrative wage garnishment proceeding because the subdivision (Hearings and Interagency Appeals) of the Department's Federal Student Aid division that conducts wage garnishment hearings is distinct from the subdivision (Borrower Defense Group) of the division of Federal Student Aid that has the "necessary qualifications [and] authority" "to review the merits of borrower defense claims submitted by borrowers." Doc. No. 27-1 at 2–3. The *only thing* that Hearings and Interagency Appeals may consider, Defendant says, is "whether the debt has been discharged pursuant to a separate DOE proceeding," and "whether that proceeding remains pending" when adjudicating *any* objection to a proposed wage garnishment. Doc. No. 27 at 2.

This is obviously absurd. The Department must consider *as a borrower defense* a borrower defense claim that is submitted in objection to wage garnishment. Nothing prevents the subdivision of the Department charged with adjudicating administrative wage garnishment objections from deferring decision until the "qualified" subdivision has a chance to examine the merits of an objection

12

asserting a borrower defense. Apparently they are capable of communication. *See* Doc. No. 32 at 2. More importantly, the regulation is clear: a borrower can raise a defense based on school misconduct in response to notice of wage garnishment. 34 C.F.R. § 685.206(c)(1)(ii).

Defendant's position imposes a double exhaustion requirement on borrowers facing coercive collection on loans to which they have a borrower defense: according to Defendant, if a borrower objects to wage garnishment on borrower defense grounds, the Department will only refrain from garnishment if the borrower has separately submitted an affirmative borrower defense claim. It is mere happenstance that Plaintiff submitted a *pro se* borrower defense application in March 2015. Had she not, under the Department's view, there would be nothing wrong with garnishing her wages.

By ruling on the merits of the January 2017 decision, this Court can give Plaintiff an effective remedy to the Department's obstinate refusal to follow its own regulations. Specifically, the Court can declare that Plaintiff's loans are not legally enforceable, thereby protecting Plaintiff from ongoing collection, the threat of garnishment, and the accompanying emotional distress. *See* Doc. No. 52-1 at 29–30 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (explaining that declaratory relief is designed to spare plaintiffs from future government prosecution)). Further, the Court can vacate the January 2017 decision and remand to the Department with instructions to discharge Plaintiff's loans. Doc. No. 52-1 at 23–29 (citing *Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 657 F.3d 865, 873 (9th Cir. 2011) (explaining that directive approach is appropriate response to agency "intransigence")).

### B. The Adjudication Notice does not eliminate a reasonable expectation that the challenged conduct will recur.

To the extent any question of mootness remains, Plaintiff's case falls squarely within the well-known exception to mootness for instances of voluntary

cessation. This exception provides that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (quotation omitted), unless Defendant can overcome the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc*., 528 U.S. 167, 190 (2000); *accord Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009) (emphasizing defendant's "heavy burden").

For instance, in *Anderson v. Evans*, the Ninth Circuit concluded that the government could not moot an environmental challenge to a whaling quota by letting the quota expire while the challenge was being litigated. 371 F.3d 475, 479 (9th Cir. 2004), *amending* 350 F.3d 815 (9th Cir. 2003). In *Anderson*, the court determined that because the length of the challenged permit was at the discretion of the government, expiration of the permit amounted to voluntary cessation. *Id.* The court also observed that the government stated at oral argument that it intended to issue a new permit with the same conditions as the challenged permit if the case was dismissed for mootness. *Id.* Because the government offered "no assurance that the challenged action will not again take place," and "[o]n the contrary . . . ha[d] declared that it *will* recur," the court denied dismissal for mootness. *Id.*

Here, like in *Anderson*, the Department has made clear with its Adjudication Notice and its statements to the Court that the challenged conduct—namely, collection and garnishment of Plaintiff's unenforceable loans—will recur if this case is dismissed for mootness. The Adjudication Notice instructs Plaintiff to consolidate her FFEL loans in order to have 50% of the balance cancelled. Doc. No. 53-2 at 2–3. According to the Adjudication Notice, if Plaintiff consolidates her FFEL loans as instructed, then the Department will continue to collect 50% of Plaintiff's Direct Loans, as well as 50% of her consolidated FFEL loan balance.

*See id.* at 1–3. If, on the other hand, Plaintiff does not consolidate her FFEL loans, then the Department will continue to collect 50% of her Direct Loans and 100% of her FFEL balance. *See id.* at 2 ("The Department will direct your loan servicer to discharge 50% of the Direct loans relating to your claim . . . . The Department cannot forgive your FFEL loans until you consolidate them.").[5] Under those circumstances, Plaintiff's three defaulted FFELs would remain in default and subject to wage garnishment upon termination of this lawsuit. *See id.* at 3 ("you must continue to make payments on your loans"); *see also* Doc. No. 11 at 2 (stipulating that "garnishment will remain suspended until judgment is rendered in this civil action"); AR 1 ("The Department will issue a final administrative wage garnishment hearing decision as soon as the review of [Plaintiff's] objections has been completed."); Doc. No. 53 at 5–6 (arguing that the Adjudication Notice constitutes the promised review of Plaintiff's objections).

Plaintiff might choose not to consolidate her FFEL loans because this step would jeopardize her ability to pursue her challenge to the legal enforceability of her loans. The Federal Direct Consolidation Loan Application and Master Promissory Note requires a borrower to certify that, "If I consolidate my loans, I may no longer be eligible for . . . certain types of loan discharges or loan forgiveness [programs] . . . that were available on the loans I am consolidating." U.S. Dep't of Educ., Federal Direct Consolidation Loan Application and Master Promissory Note, https://perma.cc/Z4R8-MV8T. In addition, the Department has in the past determined that consolidation of a FFEL loan extinguishes the borrower's ability to raise school-related defenses against the repayment of the

---

[5] It is not clear why the Department cannot cancel Plaintiff's FFEL loans "until [she] consolidate[s] them," Doc. No. 53-2 at 2, in light of the fact that "all of [Plaintiff's] student loan debt, including the privately-held debt giving rise to the administrative wage garnishment decision, has been assigned to DOE," Doc. No. 32 at 2.

loan. The Department has done so because, "The Secretary's view is that claims of defenses by Direct Loan borrowers based on State laws should be recognized by the Department only if the school's act or omission has a clear, direct relationship to the loan." U.S. Dep't of Educ., Notice of Interpretation, 60 Fed. Reg. 37,768, 37,769 (July 21, 1995); *see also* 34 C.F.R. § 685.220(a) (providing that consolidation loan extinguishes underlying loans). And as a practical matter, it is not clear that Plaintiff could consolidate if she wanted to, because federal law provides that a defaulted loan that is subject to a wage garnishment order under 20 U.S.C. § 1095a is not eligible for consolidation. 20 U.S.C. § 1078-3(a)(3)(A)(i).

No matter what Plaintiff decides to do in response to the Adjudication Notice, the Department has made clear that its challenged conduct in this case is very likely to recur, either immediately upon completion of this lawsuit, *see* Doc. No. 11 at 2, or in the near future, when Plaintiff is unable to repay her still-daunting loan balance, *see* AR at 50–75 (showing Plaintiff's tens of thousands of dollars in student loan debt); Doc. No. 2-3 at 3, ¶ 10 ("I have approximately $68 dollars to my name."). This case is not moot.[6]

## II.   The January 2017 decision remains final and reviewable.

In the motion to dismiss, Defendant also attempts to re-litigate the issue of finality, asserting, "there is no operative administrative wage garnishment decision." Doc. No. 53 at 6; *see also id.* at 4 n.4 (reciting finality arguments). In her brief to show cause why this Court has jurisdiction, Plaintiff explained in detail why the January 2017 decision remained final, notwithstanding the Department's Interim Decision. Doc. No. 38 at 10–13. Specifically, Plaintiff asserted that the

---

[6] In the motion to dismiss, Defendant argues that Plaintiff has conceded that a partial discharge of her loans moots this case. Doc. No. 53 at 3 n.2 ("As Plaintiff herself stated in her October 19, 2017 briefing on jurisdiction, 'it is of course well within the Secretary's power to moot the case by discharging Ms. Dieffenbacher's loans . . . .'" (quoting Doc. No. 38 at 10 n.2)). True, Defendant can moot this case by discharging *all* of Plaintiff's loans. She has not.

January 2017 decision is final and reviewable because it (1) marks the consummation of the Department's decisionmaking process with respect to her borrower defense claim submitted in November 2016 in objection to garnishment, and because (2) legal consequences flow from that decision, including denial of Plaintiff's November 2016 borrower defense claim and affirmation of the legal enforceability of her loans. *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Plaintiff also noted that courts take a "practical," "pragmatic," and "flexible" approach to finality, *id.* at 10–11 (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)), and that the Department's characterization of its actions is not determinative, *id.* at 11 (citing *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 592 n.6 (9th Cir. 2008)). The Court agreed. Doc. No. 40.

This analysis applies with equal force today. It does not require reconsideration. *See Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996), *cert. denied*, 519 U.S. 1122 (1997) (concluding that court's finding of jurisdiction had become law of the case and remarking, "Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction."). With respect to the first *Bennet* prong, the January 2017 decision still marks the consummation of the Department's decisionmaking process regarding Plaintiff's full objection. As was true the first time Plaintiff briefed this issue:

> When considered under [*Bennett v. Spear*], it is clear that the [January 2017 decision] remains reviewable . . . [as] the consummation of the Secretary's decisionmaking with respect to Ms. Dieffenbacher's full objection. . . . Ms. Dieffenbacher challenged the [January 2017] Decision as arbitrary and capricious and initiated this lawsuit because the Secretary failed to consider her full objection to the legal enforceability of her loans, submitted in the course of garnishment proceedings. That failure persists.

17

Doc. No. 38 at 11–12. That is because, just like before, "Nowhere in her [latest decision or filings] does the Secretary address or even refer to Plaintiff's full objection, including the 29-page letter and 254 pages of exhibits." *Id.* Just as it did in the Interim Decision, in the February 2018 Adjudication Notice, the Department refers "only [to] Ms. Dieffenbacher's [March 2015] *pro se* application." *Id.* at 12. Indeed, this time, Department has made even more explicit that the latest round of collateral administrative action pertains *only* to the 2015 *pro se* application, not the full objection. *See* Doc. No. 53-1 at 1 (declaring that the "February 28, 2018" decision was "issued . . . in connection with Ms. Dieffenbacher's March 28, 2015 application for discharge of her loans on the basis of borrower defense."). Because the January 2017 decision remains the consummation of Defendant's decisionmaking process with respect to Plaintiff's full objection, it satisfies the first prong of finality.

With regard to the second *Bennet* prong, as was true before, legal consequences continue to flow from the January 2017 decision. *See* Doc. No. 38 at 12–13. Agency action satisfies this prong if it "has a direct and immediate effect on the day-to-day operations of the subject party, or if immediate compliance [with its terms] is expected." *Or. Nat. Desert Ass'n*, 465 F.3d at 982 (internal quotations omitted). Despite the Adjudication Notice, legal consequences continue to flow from the January 2017 decision, just as they did before:

> In particular, the [January 2017] Order's (1) denial of Ms. Dieffenbacher's full objection and (2) affirmation of the legal enforceability of her loans, still persist. These legal determinations require "immediate compliance" and continue to have "direct and immediate" effects on Ms. Dieffenbacher's life, including adverse credit reporting, loss of financial aid eligibility, and emotional distress.

Doc. No. 38 at 12.

The Department's Adjudication Notice does not change this analysis. The Department's January 2017 decision is that Plaintiff's "student loan debt is still

legally enforceable," including by "collection through administrative wage garnishment." AR 3–4. The effect of the Adjudication Notice on the January 2017 decision is that Plaintiff's loans are (at best) 50% enforceable or, alternately (at worst), 100% enforceable if, for reasons discussed above, she does not consolidate her loans. Yet, as was true before, this lawsuit is all that stands between Plaintiff and Defendant's ability to collect Plaintiff's loans, including through wage garnishment. *See* Doc. No. 11 at 2 ("garnishment will remain suspended until final judgment is rendered in this civil action"); Doc. No. 11-1 at 3 (suspending garnishment "until further notice" and stating garnishment order "does not expire" and "continues to exist on this individual."); *see also* Doc. No. 32 at 2 ("all of [Plaintiff's] student loan debt . . . has been assigned to DOE and placed in forbearance status pending a decision on the pending application for discharge of the underlying student loan debt"); AR 2 ("No wage garnishment on these loans will be initiated until review of [the 2015 *pro se* application] . . . is complete.").[7] It is still true, if not more so today, that:

> Defendant's latest decision does not conclusively protect Plaintiff from
> further efforts by Defendant to collect on loans that she asserts are
> unenforceable on their own terms. Nor does it ensure that Plaintiff will
> ever receive from Defendant a decision regarding the enforceability of
> her loans made in accordance with the norms of administrative law and

---

[7] To the extent Defendant wishes to argue that the Department's action to assign Plaintiff's loans to itself renders the wage garnishment order a nullity, the record does not support this claim. To the contrary, the record shows that the garnishment order remains in effect until withdrawn. *See, e.g.*, Doc. No. 11-1 at 3 (suspending garnishment "until further notice" and stating garnishment order "does not expire" and "continues to exist on this individual."). Even after the assignment, Defendant represented that she would issue a final administrative wage garnishment decision, something she would have no need to do if assignment voided the garnishment order. Moreover, as discussed above, voluntary actions cannot deprive the Court of jurisdiction unless Defendant can overcome the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur. *Laidlaw*, 528 U.S. at 190.

due process. . . . Defendant does not acknowledge that it failed to consider, and does not promise that it ever will consider, the actual material Plaintiff presented on November 2, 2016 in support of her [full objection].

Doc. No. 36 at 4. It is also still true, if not more so today, that "Ms. Dieffenbacher's loans remain outstanding and defaulted, and they continue to harm her consumer credit and emotional wellbeing." Doc. No. 38 at 9. Because the January 2017 decision satisfies both prongs of the *Bennet* test, it remains final and reviewable, and this issue remains law of the case. *See Ferreira*, 93 F.3d at 674.

## III. The Adjudication Notice does not impact the Court's jurisdiction or ability to provide a remedy.

Finally, the Department's recent Adjudication Notice does not preclude the relief Plaintiff seeks. Defendant argues that "there is no justiciable claim before this Court" in part because "as of February 28, 2018, DOE determined that 50% of Plaintiff's student loan debt is legally enforceable." Doc. No. 53 at 6. For reasons discussed above, the continued enforcement of Plaintiff's loans over her full borrower defense objection is what presents a live controversy for this Court to resolve. To the extent the Department is arguing—and it is far from clear—that the Court is precluded from declaring Plaintiff's loans unenforceable because "as of February 28, 2018, DOE determined" that they *are* enforceable, that argument must fail.

Agency adjudications can be given preclusive effect in subsequent court proceedings under certain circumstances. *See, e.g.*, *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293, 1303 (2015) ("[W]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.") (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797–98 (1986)). The February 2018 Adjudication Notice has two constituent parts, neither of which precludes the Court from concluding that

20

the January 2017 decision was wrong and declaring Plaintiff's loans unenforceable.

The February 2018 Adjudication Notice purports to "approve[] [Plaintiff's] claim for forgiveness of [her] federal student loans under the borrower defense to repayment rule, 34 C.F.R. § 685.206(c)." Doc. No. 53-2 at 1. The basis of approval is described as "the school's material misrepresentation(s) to [Plaintiff]." *Id.* In January 2017, the Department denied Plaintiff's borrower defense claim, also submitted pursuant to 34 C.F.R. § 685.206(c), raising the school's violations of California's Consumer Legal Remedies Act, Unfair Competition Law, and common law causes of action for negligent misrepresentation and fraud. AR 10–38. Although it is impossible to discern *what* conduct the Department determined to constitute "material misrepresentation(s)"—a standard that exists nowhere in any of the Department's regulations concerning borrower defense or any of Plaintiff's loan contracts—it is possible that such conduct was also raised by Plaintiff and rejected in the January 2017 decision as a basis for borrower defense. In any event, a declaration from this Court that the conduct identified in the administrative record does form the basis of a borrower defense would not be inconsistent with the February 2018 Adjudication Notice because the Notice purports to "approve" Plaintiff's borrower defense claim.

The February 2018 Adjudication Notice also purports to resolve the factual question of "the value of the education" Plaintiff purportedly received from Corinthian. Doc. No. 53-2 at 1. In order to make this determination, the Department "compar[ed] the average earnings of students who attended [Plaintiff's] program(s) of study to the average earnings of students who graduated from similar programs at other schools that adequately prepare students for gainful employment." *Id.* The administrative record in this case demonstrates that Plaintiff received *negative value* from attending Everest. *See, e.g.*, SUF 122 ("Ms. Dieffenbacher's Paralegal Associate's Degree program credits would not transfer

to other schools"); SUF 144 ("Ms. Dieffenbacher has never worked as a paralegal."); SUF 145 ("Ms. Dieffenbacher has never worked in the criminal justice field."); SUF 146 ("Ms. Dieffenbacher has tried to find work in the paralegal and criminal justice fields many times."); SUF 149 ("Everest has shattered Ms. Dieffenbacher's career goals."); SUF 151 ("Ms. Dieffenbacher cannot afford to go back to school . . . because her student loan debt is too high."); SUF 152 ("Ms. Dieffenbacher's credits from Everest are useless."); SUF 154 ("By November 2016, Ms. Dieffenbacher's student loan debt from Everest totaled almost $100,000."); SUF 156 ("Ms. Dieffenbacher's student loan debt from Everest has harmed her consumer credit."); SUF 157 ("Due to her debt level . . . Ms. Dieffenbacher could only qualify for a 'high risk loan' for a car."); SUF 159 ("Everest took Ms. Dieffenbacher away from her youngest daughter for the first four years of her life."); SUF 160 ("Ms. Dieffenbacher's student debt from Everest causes her constant stress."); SUF 163 ("Ms. Dieffenbacher feels that Everest trapped her in life."); SUF 164 ("Ms. Dieffenbacher's oldest son is afraid to go to college because of what Ms. Dieffenbacher went through at Everest."); *see also* Doc. No. 52-1 at 26–28 (summarizing complete body of evidence, with citations). Thus, a declaration from this Court that her loans are entirely unenforceable would conflict with the February 2018 determination that her loans are 50% enforceable, at least to the extent that such a declaration rests on a determination of the "value of the education" received by Plaintiff.[8]

But the February 2018 Adjudication Notice does not preclude the Court from concluding that Plaintiff's loans are entirely unenforceable, for several

---

[8] The undisputed facts in the record of this case demonstrate that Plaintiff suffered damages for the state law violations perpetrated by her school in an amount that exceeds the balance of her loan debt, and therefore, she is entitled to a complete defense to repayment, i.e., her loans are unenforceable in their entirety. *See* Doc. No. 52-1 at 26–28 (summarizing record, with citations).

reasons. First, the Department is adamant that it did not consider any of the evidence presented by Plaintiff other than in the March 2015 *pro se* borrower defense application. Doc. No. 53-1 at 1. That *pro se* application raises only a small fraction of the facts presented in Plaintiff's 283-page full objection. *Compare* AR 178–87, *with* AR 10–173, *and* Doc. No. 2-5 at 98–140, *and* Doc. No. 2-6 at 1–77. Thus, by its very nature, the Adjudication Notice leaves the vast majority of the facts at issue in this dispute unresolved. Moreover, courts in the Ninth Circuit have made clear that administrative decisions regarding claims submitted by unrepresented parties do not merit preclusive effect in subsequent actions. *See Lester v. Chater*, 81 F.3d 821, 827–28 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("Nor is res judicata to be applied where the claimant [in an administrative proceeding] was unrepresented by counsel at the time of the prior claim."); *accord Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).

Second, Plaintiff did not have an "adequate opportunity" to litigate the issue of the value of her education, in no small part because the Department refused to consider the evidence Plaintiff submitted in objection to wage garnishment in making this determination. *See B&B Hardware*, 135 S. Ct. at 1303. Rather than factor in evidence from the borrower herself, the Department relied on a completely opaque "average earnings" computation. *See* Doc. No. 53-2 at 1. But even the Department recognizes that this is wrong: "An agency may not disregard data actually available to it, as where, for example, data are available from a component of the same agency as the component of that agency that makes the determination." U.S. Dep't of Educ., Final Regulations, Program Integrity: Gainful Employment, 79 Fed. Reg. 64,889, 64,956 (Oct. 31, 2014) (citing "best available data" doctrine); *see also Commc'ns Telesystems Int'l. v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1018 (9th Cir. 1999) ("[O]nly proceedings that meet the minimal requirements of due process are accorded preclusive effect.").

1    Finally, the doctrine of preclusion is a flexible one that should not be applied

2    "rigidly" to administrative proceedings, and should not be applied in Defendant's

3    favor here, because it is Defendant's conduct alone that is creating an arguable

4    conflict. *See Lester*, 81 F.3d at 827. The Department could have addressed the

5    evidence and arguments presented in Plaintiff's full objection in its Adjudication

6    Notice. It did not. The Department also could have issued a final wage garnishment

7    hearing decision, at it has repeatedly promised to do, *see* Doc. No. 25 at 4–5; Doc.

8    No. 27 at 2, 3–4, 5; AR 1, 2; Doc. No. 39 at 2, to reconcile the apparent conflict

9    between its January 2017 decision (concluding Plaintiff's loans are 100%

10   enforceable) and its February 2018 decision (concluding Plaintiff's loans are 50%

11   enforceable). It did not. The Department could have avoided this litigation

12   altogether had it refrained from attempting to collect Plaintiff's loans through wage

13   garnishment before resolving appropriately lodged borrower defense claims, *see*

14   AR 127; Doc. No. 30-1; AR 178; AR 10; *see also* Doc. No. 31 at 6 (observing that

15   Defendant contradicted its position that it was powerless to stop wage garnishment

16   because it did not own Plaintiff's loans). It did not. And once this litigation was

17   initiated, the Department could have acknowledged that it did not give fair

18   consideration to the 29-page letter and 254 pages of evidence comprising a

19   borrower defense, and asked for an opportunity to reconsider *that* evidence.

20   Instead, it refused to acknowledge that this was even an error. *See* Doc. No. 31 at

21   4. Indeed, it is only due to Defendant's litigation tactics in this case, which include

22   filing a request for remand that was "frivolous and in bad faith," *id.* at 7, and

23   otherwise attempting at every turn to "circumvent" judicial review, Doc. No. 37 at

24   2, that the February 2018 Adjudication Notice precedes final judgment from this

25   Court on the January 2017 decision. These tactics should not be rewarded. Instead,

26   the Court should decide this case on the merits and protect Plaintiff from further

27   harassment at the hands of the Department.

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion to dismiss.


Dated: April 9, 2018

Respectfully submitted,


/s/ *Alec P. Harris*

Alec P. Harris
Eileen M. Connor
Deanne B. Loonin
Toby R. Merrill

LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 522-3003
Fax: (617) 522-0715

Robyn C. Smith
LEGAL AID FOUNDATION OF
LOS ANGELES
5228 Whittier Blvd.
Los Angeles, CA 90022
Tel.: (213) 640-3906
Fax: (213) 640-3911

*Attorneys for Plaintiff Sarah Dieffenbacher*


Charles Fox,
law student on the brief